**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE CO., | : | |
| an Ohio Corporation, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 1:05-cv-038 (WLS) |
| | : | |
| CONART INC., et. al., | : | |
| | : | |
| Defendants | : | |
| | : | |

**ORDER**

Before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 27) and

Defendants' Motion to Amend/Correct Answer to Complaint/Counterclaim (Doc. 33).  For the

following reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**; and Defendants'

Motion to Amend/Correct Answer to Complaint/Counterclaim (Doc. 33) is **GRANTED**.

**I.     Background**

On September 20, 2001, Defendant Conart, Inc., as subcontractor, entered into a

construction contract ("Contract") with Hoar Construction, LLC ("Hoar"), general contractor, to

manufacture and install precast for the University of Alabama School of Medicine Replacement

Facility in Birmingham, Alabama ("Project").  (Docs. 27, 34).  On or about September 26, 2001,

Defendants executed and delivered to Plaintiff an agreement of indemnity ("Agreement") in

consideration of and as inducement for Plaintiff's issuance of performance and payment bonds

naming Defendant Conart as principal in connection with the Project.  (Doc. 27; *see also* Doc. 1,

Exh. 1).

As collateral to secure Defendant Conart's obligations under the bonds, Great American

took an assignment of Defendant's rights to all assets owed by them, including all contracts,

equipment, accounts receivable, and inventory of Defendants Conart and Lyle Equipment Corp.

1

("Defendant Lyle Equipment"), as well as all personal assets of Defendants Robert W. and Florence M. Lyle, including life insurance. *Id*. On December 7, 2001, in legal reliance on Defendants' execution of the Agreement, Plaintiff issued Defendant Conart performance and labor & material bonds for the Project, each in the amount of $569,453.00, naming Hoar as obligee. (Docs. 27, Exhs. 1, 2).

On or about March 24, 2004, Plaintiff was notified by letter from Hoar that Defendant Conart was in default of the Contract, and was demanding that Plaintiff undertake and perform its obligations pursuant to the Performance Bond. (Doc. 27, Exh. 3). Hoar alleged that Defendant Conart failed to perform according to the terms of the Contract as early as December 20, 2002. *Id*. Hoar also indicated that it "may have to proceed with repairs" and would hold Plaintiff and Defendant Conart responsible for costs, fees, and expenses in accordance with the Contract and Performance Bond. Additionally, since September 7, 2001, Plaintiff has allegedly received claims made on the Labor & Material Bond in the amount of $62,462.86 from subcontractors and suppliers of Defendant Conart, who maintain they have not been properly paid. (Doc. 27, Exh. 9).

On or about December 6, 2004, Hoar notified Plaintiff by letter that Hoar was demanding $452,609.41 under the Performance Bond, the cost for completing Defendant Conart's work under the Contract at the time of the sending of that letter. (Doc. 27, Exh. 4). On December 9, 2004, Great American notified Defendant Conart of Hoar's December 6, 2004 demand, the approximately $62,462.86 in outstanding claims made on the Labor & Material Bond, and the approximately $14,765.00 in expense and cost Plaintiff incurred up to the date of that letter as a result of the demand and claims made on the subject Bonds. (Doc. 27, Exh. 5). In the December 9 letter, Plaintiff demanded, pursuant to the Agreement, that Defendants, as indemnitors, deposit with Plaintiff the sum of $475,000.00 as collateral security. *Id*. On or about January 31, 2005, Plaintiff received another notice by mail from Hoar Construction stating that Hoar was then demanding $478,231.00 for the cost at that time for completing Defendant Conart's work under

2

the Contract. (Doc. 27, Exh. 6).

After demanding indemnification and collateral security, Plaintiff appeared at the mediation required by the contract between Hoar and Defendant Conart. (Doc. 27). After an independent review and investigation of Hoar's Performance Bond claim and Defendant Conart's counterclaim against Hoar in relation to the Contract work performed on the Project; and after the presentation of arguments and facts by both Hoar and Defendant Conart at that mediation, Plaintiff exercised its rights under the Agreement to assume Defendant Conart's counterclaim against Hoar, and dismissed the counterclaim. (Doc. 27).

Plaintiff settled Hoar's Performance Bond claim for $225,000.00. Following the payment of this settlement, Plaintiff demanded immediate indemnification from Defendants of the claims paid to said date. (Doc. 27, Exh. 7). To date, Plaintiff alleges to have paid claims and expenses in the amount of $244,530.58. (Doc. 27, Exh. 8).[1]

On or about June 29, 2005, Plaintiff's counsel again wrote to Defendant demanding immediate indemnification of $244,530.58 for Plaintiff's alleged losses and expenses to that date, and an additional $142,442.86 as deposit for collateral security. Alternately, if Defendants

---

[1]     In its letter dated June 29, 2005, Plaintiff, as surety, alleges to have incurred the following losses and expenses:

|  |  |  |
|---|---|---|
| 1) | Hoar Construction, LLC pursuant to Performance Bond claim: | |
| | | $225,000.00 |
| 2) | Surety and construction consultants: | $10,327.92 |
| 3) | McCullers-Capps & Associates: | $3,810.00 |
| 4) | Shields Mott Lund, LLP | $9,378.90 |
| 5) | Simon Peragine Smith & Redfern LLP (mediation expenses) | $2,055.12 |
| 6) | Thompson, Slagle & Hannan, LLC | $7,710.00 |
| 7) | Misc. expenses, Plantiff's investigation of bond claims: | $1,013.64 |
| Subtotal: | | $259,295.58 |
| | Less payment made by Defendants: | <$14,765.00> |
| **TOTAL:** | | **$244,530.58** |

This figure does not include $62,442.86 in pending claims on the Labor & Material Bond, nor does it include the $20,000.00 estimated for future consulting fees or the $60,000.00 estimated for future legal fees, which will be incurred as a result of Great American having to file the instant lawsuit. Thus, Great American anticipates that its total damages will be as high as $386,973.44 in total damages. (Doc. 27, Exh. 8; *see also* Doc. 27, Exh. 9).

refused to fully indemnify Plaintiff, Plaintiff demanded Defendants deposit $386,973.44 with Plaintiff as collateral security. *Id*. As of the date of this Order, Defendants have failed and refused to indemnify Plaintiff or to deposit any amount as collateral security as required by the Agreement. (*See generally* Doc. 27).

## II.    Defendants' Motion to Amend/Correct Answer to Complaint/Counterclaim

Pursuant to Fed. R. Civ. P. 15(a), Defendants move the Court to file a copy of the "Amended Answer and Counterclaim" in substitution of their original Answer and Counterclaim. (Doc. 33, Exh. A).   Once a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

The above-captioned action was commenced on March 30, 2005. (Doc. 1).  Defendants filed their Answer and Counterclaim on May 16, 2005.  (Doc. 11)[2].  Thereafter, on May 26, 2005, Defendants allege that Plaintiffs entered into a unilateral settlement of certain performance and labor and material bonds claims.  (*See* Doc. 33).  Defendants further maintain that, without amending its Complaint, Plaintiff now seeks indemnification from Defendants for expenditures and obligations it incurred in connection with the above-mentioned settlement.  *Id*.  Defendants further contend that Plaintiff's actions were not in good faith and give rise to additional counterclaims.  *Id*.  Finally, Defendants assert that "fundamental fairness and the interests of justice dictate that [they] be granted leave to file an Amended Answer and Counterclaim asserting additional defenses and claims. *Id*.  Plaintiff has filed neither response nor objection to the instant motion.

For good cause shown, the Court **GRANTS** Defendants' Motion to Amend their Answer and Counterclaim.  (Doc. 33).  Defendants are **PERMITTED** to amend their Answer and Counterclaim only to the extent such an amendment addresses defenses and claims incurred as a

---

[2]      Plaintiffs filed their Response to Defendants' Answer and Counterclaim on May 31, 2005.  (Doc. 22).

result of Plaintiff's May 26, 2005 settlement of performance and labor and material bonds claims.  If Defendants so elect, they may file an amended answer and counterclaim with this court **within fourteen (14) days of this Order**.

**III.    Plaintiff's Motion for Preliminary Injunction**

Plaintiff moves the Court for a preliminary injunction seeking specific performance of the Agreement.  (Doc. 27).  Specifically, Plaintiff seeks an order requiring Defendants, as the undersigned indemnitors under the Agreement, to indemnify Plaintiff, as surety, for losses and expenses in the amount of $244,538.58 it has allegedly incurred as a result of claims made on the Performance and Labor & Material Bonds.  (Docs. 27, 35).  Additionally, Plaintiff seeks specific performance of the collateral security provision of the Agreement requiring the Defendants, as indemnitors under the Agreement, to deposit collateral security with Plaintiff, as surety. *Id*.  In opposition, Defendants assert that Plaintiff is not entitled to any of the requested relief, alleging Plaintiff's unilateral settlement of claims asserted against the Performance and Labor & Material Bonds in question to have not been made in good faith in violation of the express terms of the Agreement and applicable Georgia law.  (Doc. 34).

Generally, to prevail on a motion for preliminary injunction, the moving party must establish: 1) a substantial likelihood of prevailing on the merits; 2) irreparable injury unless the injunction issues; 3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and 4) the injunction would not be adverse to the public interest. U. S. v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983).  The Eleventh Circuit states further:

> A preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville,  896 F.2d 1283, 1285 (11th Cir. 1990) (*citing* Amer. Radio Ass'n v. Mobile Steamship Ass'n, Inc., 483 F.2d 1, 4 (5th Cir.1973)).

"The burden of persuasion in all of the four requirements is at all times upon the plaintiff."

Jefferson County, 720 F.2d at 1519 (*quoting* Canal Authority of State of Fla. v. Calloway, 489 F.2d 567, 573 (5th Cir. 1974)).  Furthermore, a mandatory preliminary injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." Exhibitors Poster Exchange, Inc. v. Screen Service Corp., 441 F.2d 567, 573 (5th Cir. 1974).[3]

### A.    Substantial Likelihood on the Merits

This is a diversity action to which Georgia substantive law applies. (*See* Doc. 1).[4] Generally, under Georgia law, "parties to an insurance bond are bound by its plain and unambiguous terms." Am. Cas. Co. v. Etowah Bank, 288 F.3d 1282, 1285 (11th Cir. 2002) (*citing* Richards v. Hanover Ins. Co., 250 Ga. 613, 299 S.E.2d 561, 563 (Ga. 1983)).  Where a term is ambiguous, "it must be construed against the insurer, as the drafter, and in favor of the insured." Am. Cas. Co., 288 F.3d at 1285 (*citing* Georgia Baptist Children's Homes & Fam. Ministries v. Essex Ins. Co., 207 Ga. App. 346, 427 S.E.2d 798, 801 (Ga. Ct. App. 1993); Georgia Farm Bureau Mut. Ins. Co. v. Huncke, 240 Ga. App. 580, 524 S.E.2d 302, 303 (Ga. Ct. App. 1999)).  "Words of an insurance contract must be given their usual, ordinary, and common meaning." Am. Cas. Co., 288 F.3d at 1285 (*citing* Bold Corp. v. Nat'l Union Fire Ins. Co., 216 Ga. App. 382, 454 S.E.2d 582, 584 (Ga. Ct. App. 1995)).

Here, the indemnity provision in paragraph 2 of the Agreement states in relevant part:

> The Undersigned jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur...(2) By

---

[3]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[4]    The instant action was brought pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of Ohio and each Defendant is a citizen of Georgia and the amount of controversy, exclusive of interest and costs, exceeds $75,000.00.  Venue is proper in this District and Division because the Defendants reside in this District and Division.  *See* 28 U.S.C. § 90(b)(5).

reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, <u>as soon as liability exists or is asserted against the Surety</u>, whether or not the Surety shall have made any payment therefor...In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated(Doc. 1, Exh. 1, ¶2) (emphasis added).

Additionally, in the event of "any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds...or of the provisions of any paragraphs of this Agreement," Defendants agreed to assign to Plaintiff, as surety, "[a]ll ctions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, labor and materialmen..." (Doc. 1, Exh. 1, ¶3).   Taken together, the indemnity and assignment provisions plainly indicate that as soon as liability was asserted against Plaintiff for breach of the Agreement by Defendants, Defendants: 1) owe Plaintiff indemnity and exoneration for any payments made to third parties in good faith; and 2) assign to Plaintiff all rights in any contracts made in reliance or subject to the Agreement as collateral.

Here, Defendants suggest that Plaintiff did not settle the subject claims in good faith in violation of the Agreement and Georgia law.  (Doc. 34).  "Where a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion." Transamerica Ins. Co. v. H.V.A.C. Contractors, 857 F. Supp. 969, 975 (11th Cir. 1994) (*quoting* Reliance Ins. Co. v. Romine, 707 F. Supp. 550, 552 (S.D.Ga. 1989), *affd*, 888 F.2d 1344 (11th Cir. 1989)).  More specifically, Defendants allege that Defendant Conart "had meritorious defenses to each claim asserted against its bonds and substantial claims for damages against Hoar," neither of which Plaintiff fully investigated prior to settlement. *Id*.  Defendants further allege that Plaintiff, through its representative Joel Beach, "failed to properly consider Defendant

Conart's interests, and exhibited anger and ill-will toward the company, its employees and its position." *Id*. Defendants do not, however, direct the Court to a legal or contractual duty on the part of the Plaintiff to conduct any such investigation, such that Plaintiff's failure to so investigate would constitute a breach of the duty of good faith. *See* Transamerica, 857 F.Supp at 974 (*citing* McLendon v. Hartford Accident & Indem. Co., 119 Ga. App. 459, 461 (1969) (finding that a surety owes a fiduciary's good faith duty to indemnitors only where the contract in question specifically provides for that duty)). Furthermore, the only evidence Defendants offer in support of their allegations of Plaintiff's alleged bad faith are the affidavits of Defendant Robert Lyle and Lee Euard. (Doc. 34, Exhs. 1, 2). Taken together, the affidavits do not support an inference that Plaintiff made the subject payments in bad faith.

Even if, arguendo, the affidavits suggest the parties strongly disagreed with each other as to how to settle the subject claims, neither affidavit presents evidence that support a finding that Plaintiff acted in bad faith or had a motive to do so. *See id*. Finally, the affidavit of Joel Beach presents evidence that supports a finding that Plaintiff investigated and evaluated the subject claims in good faith. (Doc. 35, Exh. 2). Similar to the contract at issue in Transamerica, "the [Agreement in this case] and pertinent Georgia law, required [P]laintiff only to make a good faith determination of valid claims, not be correct in his evaluations." Transamerica, 857 F.Supp at 974. The Court finds that Defendants have neither established a duty to investigate owed Defendants by Plaintiff nor presented evidence of Plaintiff's bad faith. *See id*. at 975.

As Defendants neither dispute that they agreed to the terms of the Agreement nor assert any real defenses to the enforcement of the same, as a matter of law, there is a substantial likelihood that Plaintiff will succeed on the merits of this case.

**B.    Inadequate Remedy at Law**

Defendants acknowledge in the Agreement that Plaintiff has no adequate remedy at law. The Agreement clearly states that the undersigned Defendants' failure to deposit "immediately

upon demand, the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law.  The [undersigned Defendants] agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary." (Doc. 1, Exh. 1, ¶2).  Therefore, the Court finds that absent enforcement of the Agreement, Plaintiff has no adequate remedy at law.

### C.      Balancing the Interests

Here, Plaintiff seeks enforcement of the terms of the Agreement, which Defendants agreed to willingly.  (*See generally* Doc. 27).   Defendants assert that they will suffer financial hardship if required to reimburse Plaintiff at this point in the litigation.  (*See* Doc. 34).  As surety, Plaintiff is allowed to hold any funds posted by Defendants in trust for payment only of those claims related to the bond at issue.  All other funds necessarily will be returned to Defendants.  Alternately, if the preliminary injunction is not granted, Plaintiff will be forced to continue to use its own funds in defense of the claims against Defendants.  *See* Western Cas. & Sur. Co. v. Biggs, 217 F.2d 163 (7th Cir. 1954) (it is well established that a surety suffers serious harm when it has to use its own funds to defend and pay bonded claims)). The balancing of the interests, as currently presented to the Court, weighs in favor of Plaintiff.[5]

### D.      Public Policy Concerns

As a matter of public policy, enforcement of contract terms is favored as long as said terms are not oppressive, onerous, or otherwise unconscionable.  *See supra* Am. Cas. Co., 288 F.3d at 1282.  As established earlier, the subject Agreement was entered into willingly and subject to no real defenses to contract formation.  Therefore, a preliminary injunction in favor of Plaintiff would not be adverse to the public interest.

---

[5]         The Court notes that analysis of the parties' relevant interests may need to be revisited upon submission of Defendant's amended answer and counterclaim. *See supra* Section II.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction.  (Doc. 27).  Defendants are **ORDERED** to deposit $386,973.44 with Plaintiff in trust as collateral security **within fourteen (14) days of this Order** .[6]

### III.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**; and Defendants' Motion to Amend/Correct Answer to Complaint/Counterclaim (Doc. 33) is **GRANTED**.

Accordingly, Defendants are:

1.    **PERMITTED** to amend their Answer and Counterclaim only to the extent such an amendment addresses defenses and claims incurred as a result of Plaintiff's May 26, 2005 settlement of performance and labor and material bonds claims.  If Defendants so elect, they may file an amended answer and counterclaim with this court **within fourteen (14) days of this Order**.

2.    **ORDERED** to deposit $386,973.44 with Plaintiff in trust as collateral security **within fourteen (14) days of this Order**.

**SO ORDERED**, this ___29th___ day of March, 2006

**    /s/W. Louis Sands                       **
**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6]    This amount includes Plaintiff's actual and projected claims, expenses and costs. *See supra* n.1.